UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER KLUG,

                                    Plaintiff,

                    -v-

BURGHERGRAY LLP, GOPAL M. BURGHER, *and*
SANDRA M. HONEGAN-POUNDER,

                                    Defendants.

---

24 Civ. 6577 (PAE)

<u>ORDER</u>

PAUL A. ENGELMAYER, District Judge:

Plaintiff Christopher Klug brings this action against defendants BurgherGray LLP ("BurgherGray"), Gopal M. Burgher, and Sandra M. Honegan-Pounder alleging a violation of the D.C. Wage Act, D.C. Code § 32-1302. Klug had earlier commenced an arbitration against defendants under the rules of the American Arbitration Association ("AAA"), bringing claims sounding in contract and quasi contract. *See* Dkt. 14 ("Pl. Mem.") at 1. Late in the arbitration, Klug unsuccessfully attempted to add the D.C. Wage Act claim brought here. *See* Dkt. 15 ("Def. Mem."), Ex. D ("Final Award Excerpt") at 6–8. While the arbitration was pending, Klug separately filed a lawsuit in D.C. Superior Court, bringing the same D.C. Wage Act claim. Pl. Mem. at 3–4. Citing the forum selection clauses and arbitration provisions in Klug's employment contracts, the D.C. Superior Court dismissed the action, without prejudice, for lack of jurisdiction. Pl. Mem., Ex. A ("D.C. Order") at 9. The arbitration thereafter resulted in an award (the "Final Award") in Klug's favor based on his contract claims. Pl. Mem. at 1; Final Award Excerpt at 11.

On December 9, 2024, this Court ordered Klug to show cause why this case should not be dismissed (1) for lack of jurisdiction, and (2) insufficient service of process. Dkt. 6. Klug

responded that the Court has jurisdiction because the arbitrator had incorrectly excluded his D.C. Wage Act claim, Pl. Mem. at 2–3, and that he failed to serve defendants while unsuccessfully seeking their waiver of such service, "[i]n an effort to avoid . . . costs," Dkt. 4 at 2–3. Defendants counter that the Court lacks jurisdiction because Klug did not serve them within 90 days of filing his complaint, as required by Federal Rule of Civil Procedure 4(m), and that his claim is procedurally barred by mandatory arbitration provisions. Def. Mem. at 14–15, 20–22.

Before the Court are defendants' motion to vacate the Final Award, Dkt. 23, Klug's motion for partial vacatur, Dkt. 26, Klug's counsel's motion to withdraw, Dkt. 19, and Klug's opposition, Dkt. 28–29. For the following reasons, the Court *sua sponte* dismisses this action for lack of jurisdiction. Accordingly, the Court denies the remaining motions as moot.

## I.    Background

### A.    Factual Background

Klug is a lawyer and former employee of BurgherGray, a New-York-based law firm. Compl. ¶¶ 13, 15–17. Burgher and Honegan-Pounder are co-founders of BurgherGray. *Id.* ¶¶ 2–3. Klug entered into an employment agreement and an of-counsel agreement with BurgherGray (collectively, the "Agreements") on August 17 and September 19, 2020, respectively. *Id.* ¶¶ 16–17; Def. Mem. at 9. Notably, the Agreements included mandatory arbitration provisions that stated that any claim "against the Firm or any of its affiliates, directors, officers or employees under federal, state or local statutory or common law" is to be "resolved solely by binding arbitration in New York, New York in accordance with the rules of the [AAA]." Def. Mem. at 9. The provisions also included a forum selection clause, noting that all claims "shall be governed by and construed in accordance with the substantive laws of the State of New York[.]" Pl. Mem. at 5; Def. Mem. at 10.

2

**B.    Procedural History**

On or about February 17, 2023, Klug commenced an arbitration against BurgherGray. Def. Mem. at 10.

On October 23, 2023, after the parties cross-moved for summary judgment, Klug moved to amend his arbitration demand to add the D.C. Wage Act claim. *Id.* at 8.

On May 10, 2024, as the arbitration was pending, Klug filed a complaint in the D.C. Superior Court against defendants, bringing the same contract claims from the arbitration and the same D.C. Wage Act claim raised here. D.C. Order at 2; Def. Mem. at 8. On July 18, 2024, the D.C. Superior Court dismissed the action in light of the forum selection clauses and arbitration provisions in the Agreements. *See* D.C. Order at 9–10; Def. Mem. at 8–9.

On July 30 and August 26, 2024, Klug tried the case before the arbitrator. Final Award Excerpt at 10. On August 30, 2024, Klug filed the instant Complaint. Dkt. 1. On November 25, 2024, the arbitrator, based on Klug's contractual claims, rendered his Final Award of $406,098 in unpaid wages and more than $300,000 in attorney's fees, costs, and interest, in favor of Klug. Dkt. 4. Relevant here, in the Final Award, the arbitrator denied Klug's motion to add the D.C. wage claim for several reasons, including that (1) the original demand concerned contract, not statutory, claims; (2) the parties had agreed, at the pre-hearing conference 15 months earlier, that the pleadings would not be further amended; and (3) the discovery the parties had undertaken had not included evidence necessary to resolve the new claim. *See* Final Award Excerpt at 6–8. Klug did not alert this Court of the resolution of the arbitration or the Final Award.

On December 9, 2024, this Court ordered Klug to show cause why he did not serve defendants within 90 days after filing the complaint, as required by Rule 4(m). Dkt. 3. On December 20, 2024, Klug replied, explaining that he had commenced the instant litigation to

preserve his D.C. Wage Act claim, but failed to serve defendants to avoid costs. Dkt. 4. On December 30, 2024, the Court ordered Klug to serve defendants forthwith and file a notice attesting to such service, and to show cause why the D.C. Wage Act claim should not be dismissed as procedurally barred. Dkt. 6. On January 6, 2024, Klug served defendants, Dkts. 7–12, and on January 21, 2024, filed a notice attesting to such service, Dkt. 13. On January 21, 2025, Klug responded to the order to show cause. Dkt. 14. On January 28, 2025, defendants opposed. Dkt. 15.

On February 17, 2025, while this motion was pending, Klug's counsel moved to withdraw. Dkts. 19–21. On February 20, 2025, defendants moved to vacate the Final Award. Dkt. 23. On February 24, 2025, Klug responded by moving for partial vacatur of the Final Award. Dkts. 26–27. On March 4, 2025, Klug opposed his counsel's motion to withdraw. Dkts. 28–29.

## II.    Arbitration Provisions

In attempting to sidestep the provisions of his agreement that mandated arbitration of his disputes with defendants, Klug argues that, because the arbitrator refused to permit him to file his D.C. Wage Act claim during arbitration, he should be allowed to do so in this litigation. Pl. Mem. at 2–4. Defendants counter that the mandatory arbitration provisions bar Klug from bringing this claim outside of arbitration, regardless whether the arbitrator was correct to bar it. Def. Mem. at 20–21. Defendants are correct. Because Klug unequivocally agreed to arbitrate all claims against defendants, he cannot pursue this—or any related—claim before the Court.

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "parties may contract to arbitrate their disputes, and such agreements are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Doctor's Assocs.,*

*Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (quoting 9 U.S.C. § 2).  "Where a party to an arbitration agreement refuses to comply with that agreement, and instead attempts to proceed in litigation, the other party may move to stay the litigation . . . and compel arbitration."  *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 240 (S.D.N.Y. 2020) (citing 9 U.S.C. §§ 3–4).  A court considering whether a purported arbitration agreement bars litigation must decide (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; and, if applicable, (3) "whether Congress intended those claims to be nonarbitrable."  *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (alteration in original) (citation omitted).  "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate."  *Nunez v. Citibank, N.A.*, No. 8 Civ. 5398, 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009).

To determine whether a valid arbitration agreement exists, the Court looks to state law. *See, e.g.*, *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) ("[I]n evaluating whether the parties have entered into a valid arbitration agreement, the court must look to state law principles.").  Here, under the agreements' forum selection clauses, New York law applies.  *See* Pl. Mem. at 5; Def. Mem. at 10; *see also Martinez v. GAB.K, LLC*, 741 F. Supp. 3d 26, 33 (S.D.N.Y. 2024) (due to choice of law provision in arbitration agreement, New York state law governs "whether the parties have agreed to arbitrate").  The elements necessary for a valid contract under New York law are "offer, acceptance, consideration, mutual assent and intent to be bound."  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004).  "New York contract law presumes that a written agreement is valid and that it accurately reflects the intention of the parties, and imposes a heavy burden on the party seeking to disprove those presumptions."  *Chen-Oster*, 449 F. Supp. 3d at 241–42 (quoting *Aviall, Inc. v. Ryder Sys., Inc.*,

913 F. Supp. 826, 831 (S.D.N.Y. 1996)). "Under such principles, in the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (cleaned up).

Here, the essential elements of a valid contract under New York law plainly are met. The Agreements—which contained arbitration provisions—are written contracts executed by both parties. Def. Mem. at 20; Compl. ¶¶ 16–17. Klug has not claimed any fraud or wrongful act by defendants; he thus is presumed to have known of and assented to the terms of the Agreements. *See e.g.*, *Gold*, 365 F.3d at 149; *Schwartz v. Sterling Ent. Enters., LLC*, 21 Civ. 1084, 2021 WL 4321106, at \*3 (S.D.N.Y. 2021). Nor does Klug dispute that a valid agreement to arbitrate exists. Instead, he suggests the arbitration provisions should not be enforced with respect to the D.C. Wage Act claim because, in his view, the arbitrator erred in barring the claim from arbitration. Pl. Mem. at 2–4.

In fact, that decision appears to have been well within the arbitrator's broad discretion under the AAA's governing rules, *see* Commercial Rules of Arbitration R-6; Def. Mem. at 17. But even if Klug viewed it as erroneous, his remedy would have been to petition to vacate, in whole or in part, the arbitrator's Final Award, and to attempt to satisfy the demanding standards to do so. *See, e.g.*, *Wells Fargo Advisors LLC v. Tucker*, 373 F. Supp. 3d 418, 423 (S.D.N.Y. 2019) (party seeking vacatur of arbitration award "bears the burden of proof, and the showing required to avoid confirmation is very high" (cleaned up)); *Stone v. Theatrical Inv. Corp.*, 64 F. Supp. 3d 527, 533 (S.D.N.Y. 2014) ("The reviewing court owes strong deference to arbitral awards and the arbitral process, and so a party seeking to vacate an arbitration award must clear a

high hurdle." (cleaned up)). It would not have been to end-run a valid arbitration agreement by bringing a claim in court in contravention of that agreement.

And bringing the D.C. Wage Act claim in this Court is in flagrant contravention of that agreement. In determining whether a dispute falls within the scope of an arbitration provision, courts generally construe such agreements broadly. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]"). Arbitration is properly compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). Here, Klug's D.C. Wage Act claim falls well within the scope of the arbitration provision, which commits exclusively to arbitration "any claim by [Plaintiff] against [BurgherGray] or any of its affiliates, directors, officers or employees under federal, state or local statutory or common law[.]" Def. Mem. at 20.

Finally, the question of whether Congress intended D.C. Wage Act claims—state statutory claims—to be nonarbitrable is inapplicable, as this third factor is relevant only to *federal* statutory claims. *See, e.g.*, *Daly*, 939 F.3d at 421 ("In reviewing a motion to compel arbitration, we must therefore determine . . . if federal statutory claims are asserted, . . . whether Congress intended those claims to be nonarbitrable."); *Oldroyd v. Elmira Savings Bank, FSB*, 134 F.3d 72, 77 (2d Cir. 1998) ("It is well settled that federal statutory claims can be the subject of arbitration, absent a contrary congressional intent."). Klug does not argue that Congress nonetheless intended D.C. Wage Act claims to be nonarbitrable, but even if he did, such an argument would be unsustainable. *See Daly*, 939 F.3d at 421. "The burden of showing such

7

legislative intent lies with the party opposing arbitration," *id.* at 78, and Klug has not attempted to show such here. On the contrary, his belated attempt to add that claim to his arbitration demand tacitly acknowledges the suitability of such a claim for arbitration.

Accordingly, Klug's D.C. Wage Act claim, the sole claim he brings in this litigation, is barred by the arbitration agreement. *See, e.g.*, *All Premium Contractors Inc. v. Sunlight Fin. LLC*, No. 23 Civ. 5059, 2023 WL 6928777, at *7 (S.D.N.Y. Oct. 19, 2023) (compelling arbitration after finding a valid arbitration agreement); *West v. LaserShip, Inc.*, No. 21 Civ. 5382, 2023 WL 1972216, at *2 (S.D.N.Y. Feb. 13, 2023) (same); *Vanguard Logistics (USA), Inc. v. Blujay Sols. Ltd.*, No. 20 Civ. 4383, 2021 WL 1165068, at *4 (S.D.N.Y. Mar. 25, 2021) (same).

## III.    Lack of Service

Even had Klug's claim not been barred by the arbitration agreement, Klug's failure to timely serve defendants would still require dismissal.

Rule 4(m) requires dismissal without prejudice if the plaintiff fails to serve defendants within 90 days after the complaint is filed. Although a court must offer an extension for an appropriate period "if the plaintiff shows good cause for the failure," Fed. R. Civ. P. 4(m), "good cause, or 'excusable neglect,' is evidenced only in exceptional circumstances, where the insufficiency of service results from circumstances beyond the plaintiff's control." *Feingold v. Hankin*, 269 F. Supp. 2d 268, 276 (S.D.N.Y. 2003) (citation omitted). "An attorney's ignorance of the rules, inadvertence, neglect, or mistake," however, do not suffice. *Id.*

On August 30, 2024, Klug filed the Complaint, *see* Dkt. 1, making his deadline to effectuate service November 28, 2024. Klug did not serve defendants or move to stay this case pending the arbitration. On December 20, 2024, in response to an order to show cause why he failed to serve defendants within the 90-day period, Dkt. 3, Klug explained that he intentionally

did not serve defendants in hopes that they would waive service and spare him additional costs, Dkt. 4. On December 30, 2024, the Court ordered Klug to serve defendants forthwith and file a notice attesting to such service. Dkt. 6. On January 6, 2024, Klug served defendants, Dkts. 7–12, and on January 21, 2024, he filed the requested notice, Dkt. 13.

Klug thus did not serve BurgherGray within the required 90-day period under Rule 4(m). Nor did he show good cause for failing to do so. On the contrary, by his own admission, Klug intentionally flouted the service deadline in hopes that defendants would waive service, not because of a circumstance beyond his or his counsel's control. *See, e.g., Benites v. N.Y. Dep't of Corr. & Cmty. Supervision*, No. 21 Civ. 06863, 2023 WL 1966181, at *3 (S.D.N.Y. Feb. 13, 2023) ("[A] circumstance beyond counsel's control . . . is the only basis for a showing of good cause."); *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013) (same). Nor did he correct his delay when defendants did not waive service. Klug's excuse thus does not gain any traction. Klug's improper service provides an additional basis to dismiss this case.

## CONCLUSION

For the foregoing reasons, the Court *sua sponte* dismisses this action. The dismissal is with prejudice to Klug's ability to bring a D.C. Wage claim anew in court. The Court accordingly denies as moot the cross-motions with respect to the arbitral award and Klug's counsel's motion to withdraw.

The dismissal is without prejudice to either party's right to file a petition to confirm or vacate the arbitral award. The Court does not express a view as to whether any such petition would be timely, or the effect, if any, on the timeliness of a petition on the late-filed motions in this case with respect to that award.

The Court respectfully directs the Clerk of Court to terminate all pending motions and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: March 11, 2025
New York, New York

10